Michael A. Grisham
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
Telephone: 907-257-7829
Email: grisham.michael@dorsey.com

Kevin D. Hartzell (pro hac vice motion forthcoming)
Brooke H. McCarthy (pro hac vice motion forthcoming)
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE, 68102
Telephone: (402) 346-6000
Email: Kevin.Hartzell@kutakrock.com
Email: Brooke.McCarthy@kutakrock.com

*Attorneys for Plaintiff ALPS Property & Casualty Insurance Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| HOZUBIN & ASSOCIATES, P.C. d/b/a HOZUBIN, MOBERLY & ASSOCIATES; REBECCA J. HOZUBIN; LYNCH & ASSOCIATES, P.C.; EDITH LYNCH, in her capacity as Personal Representative of the Estate of Timothy M. Lynch; MAXIM HEALTHCARE, INC.; and ALAINA ADKINS, | |
| Defendants. | |

Plaintiff ALPS Property & Casualty Insurance Company ("ALPS"), pursuant to

28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure 8(a) and 57, for its

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*     Page 1
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 1 of 59

complaint against Defendants Hozubin & Associates, P.C. d/b/a Hozubin, Moberly & Associates, formerly d/b/a Hozubin, Moberly, Lynch & Associates ("Hozubin Firm"), Rebecca J. Hozubin, Esq. ("Hozubin" and together with the Hozubin Firm, "Hozubin Defendants"), Lynch & Associates, P.C. ("Lynch Firm"), Edith Lynch in her capacity as Personal Representative of the Estate of Timothy M. Lynch ("Lynch Estate" and together with the Lynch Firm, "Lynch Defendants"), Maxim Healthcare, Inc. ("Maxim"), and Alaina Adkins ("Adkins" and together with Maxim, "Maxim Defendants")[1], alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     ALPS is an insurance company and corporation organized under the laws of the State of Montana with its principal place of business in the State of Montana.

2.     The Hozubin Firm is a professional corporation formed on or around May 29, 2007 under the laws of the State of Alaska with its principal place of business in Anchorage, Alaska.

3.     Hozubin is an attorney licensed in the State of Alaska and, upon information and belief, a resident and citizen of the State of Alaska.  Hozubin is, upon information and belief, a founding and principal member of the Hozubin Firm.

4.     The Lynch Firm was a professional corporation formed under the laws of the State of Alaska with its principal place of business in Anchorage, Alaska. Timothy M. Lynch ("Lynch") was, upon information and belief, the founding and

---

[1] ALPS will refer to the Hozubin Defendants, the Lynch Defendants, and the Maxim Defendants collectively as "Defendants".

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*     Page 2
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 2 of 59

principal member of the Lynch Firm; he passed away on April 5, 2016. On September 8, 2018, by Certificate of Involuntary Dissolution/Revocation issued by the Commissioner of Commerce, Community, and Economic Development of the State of Alaska, the Lynch Firm was involuntarily dissolved.

5.     Edith Lynch ("Mrs. Lynch") is the Personal Representative of the Lynch Estate and, upon information and belief, a resident and citizen of the State of Alaska.

6.     Maxim is a corporation formed on or around September 2, 1988 under the laws of the State of Maryland with its principal place of business in Columbia, Maryland.

7.     Adkins is a resident and citizen of the State of Alaska.

8.     The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between ALPS and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because (a) a substantial part of the events giving rise to ALPS's claims for relief occurred in this district, (b) the Hozubin Firm's principal place of business is in this district, (c) the Lynch Firm's principal places of business during the events giving rise to ALPS's claims for relief was in this district, and (c) Hozubin, Mrs. Lynch, and Adkins all reside in this district.

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*       Page 3
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 3 of 59

**GENERAL ALLEGATIONS**

**I.** <u>**Collens Suit**</u>

10.     This declaratory judgment and insurance coverage dispute arises from the representation of Maxim and Adkins, Maxim's ranking employee in Alaska, named defendants in the suit styled *Jesse M. Collens v. Alaina Adkins, et al.*, Case No. 3AN-14-05961 (Super. Ct. 3rd Jud. Dist. Anchorage, Alaska) ("Collens Suit"), by the Lynch Firm and the Hozubin Firm.

11.     In the Collens Suit, filed on March 24, 2014, Jesse M. Collens ("Collens"), a quadriplegic, alleged Maxim, a large national home health care service provider, improperly discharged Collens from the provision of extensive nursing care while Collens was living in Alaska. (May 2, 2014 Second Amended Complaint in the Collens Suit ("Second Amended Complaint") ¶¶ 10-15. A true and correct copy of the Second Amended Complaint, without exhibits, is attached as Exhibit A.).

12.     Collens alleged Maxim was the only provider in Alaska with the capability to provide him in-home care and suffered damages as a consequence of Maxim's improper discharge. (*See* August 24, 2017 Findings of Fact and Conclusions of Law in the Collens Suit ("Findings & Conclusions") ¶¶ 69, 71-72 (Findings of Fact). A true and correct copy of the Findings & Conclusions is attached as Exhibit B.).

13.     Collens was awarded damages for breach of contract, violation of Alaska's Unfair Trade Practices Act ("UTPA"), intentional infliction of emotional distress, misrepresentation, and punitive damages. (Exhibit B ¶ 1 (Conclusions of Law)).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*          Page 4
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 4 of 59

### A.     Lynch's Representation of the Maxim Defendants

14.     On or about April 17, 2014, on information and belief, the Maxim Defendants retained Lynch and the Lynch Firm as their counsel in the Collens Suit.

15.     Lynch represented the Maxim Defendants in the Collens Suit from April 17, 2014 until his incapacitation and death in April 2016.  (Maxim's May 8, 2019 Complaint ("Maxim Complaint") in the suit styled *Maxim Healthcare, Inc. v. Hozubin, Moberly, Lynch & Associates, et al.*, Case No. 3AN-19-06876 (Sup. Ct. 3rd Jud. Dist. Anchorage, Alaska) ("Maxim Suit") ¶ 11.  A true and correct copy of the Maxim Complaint is attached as Exhibit C.  *See also* Adkins' May 10, 2019 Complaint ("Adkins Complaint") in the suit styled *Alaina Adkins v. Hozubin, Moberly, Lynch & Associates, et al.*, Case No. 3AN-19-07005 (Sup. Ct. 3rd Dist. Anchorage, Alaska) ("Adkins Suit" and together with the Maxim Suit, "Suits") ¶ 11.  A true and correct copy of the Adkins Complaint is attached as Exhibit D.).

16.     By correspondence from Lynch to ALPS dated August 18, 2014, Lynch explained the Lynch Firm and Hozubin & Associates, P.C. would jointly conduct separate business in the same office from August 1, 2014 to July 31, 2015.  Thereafter, the two firms would be merged as Hozubin, Moberly, Lynch & Associates, *i.e.*, the Hozubin Firm.

17.     As a result of the changes in Lynch's firm affiliation, with respect to Lynch's representation of the Maxim Defendants in the Collens Suit: (a) from April 17, 2014 to July 31, 2015, Lynch represented the Maxim Defendants on behalf of

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 5
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 5 of 59

the Lynch Firm and (b) from August 1, 2015 until his incapacitation and death in early April 2016, Lynch represented the Maxim Defendants on behalf of the Hozubin Firm.

**B.    Transition to the Hozubin Defendants' Representation of the Maxim Defendants**

18.    In late March or early April 2016, Lynch became incapacitated; by correspondence dated April 3, 2016, Hozubin advised the contact at Maxim, David Singer ("Singer"), she would be serving as counsel for the Maxim Defendants in the Collens Suit in Lynch's absence.

19.    Lynch passed away on April 5, 2016.

20.    After Lynch's death and the change in counsel, the Maxim Defendants moved to continue the scheduled trial date in the Collens Suit. The court granted the motion, set trial for August 29, 2016, and set a July 15, 2016 deadline for the parties to file retained expert reports. (May 19, 2016 Routine Pretrial Order in the Collens Suit. A true and correct copy of the May 19, 2016 Routine Pretrial Order is attached as Exhibit E.).

**C.    Expert Disclosures, Reports, Motions, and Communications**

21.    On June 30, 2016, Collens filed his Notice of Service of Expert Reports for Stephen Colt, Ph.D., and Jill R. Friedman. (*See* July 29, 2018 Docket Report in the Collens Suit ("Collens Suit Docket") at p. 10. A true and correct copy of the Collens Suit Docket is attached as Exhibit F.).

22.    On July 15, 2016, the Maxim Defendants filed their expert disclosures in the Collens Suit ("Maxim Expert Disclosures") but did not file any expert reports. A true

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,    Page 6
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG    Document 1    Filed 07/19/19    Page 6 of 59

and correct copy of the Maxim Expert Disclosures is attached as Exhibit G. In the Maxim Expert Disclosures, the Maxim Defendants disclosed their intent to withdraw Steve Roberts as an expert witness and retain John D. Fountaine as a damages expert. (Exhibit G).

23. On July 19, 2016, Collens moved to strike the Maxim Defendants' experts on the basis the Maxim Defendants failed to timely provide expert reports. (July 19, 2016 Motion to Strike in the Collens Suit. A true and correct copy of Collens's July 19, 2016 Motion to Strike is attached as Exhibit H.).

24. By correspondence dated August 5, 2016, Hozubin advised Collens's counsel, Michael Stehle, the Maxim Defendants were "shocked" by Collens's expert reports, as there "had never been a prior indication [Collens] was seeking damages anywhere in the realm that he is seeking." (August 5, 2016 correspondence from Hozubin to Stehle ("August 5, 2016 Correspondence"). A true and correct copy of the August 5, 2016 Correspondence is attached as Exhibit I.).

25. In the August 5, 2016 Correspondence, Hozubin further informed Stehle she intended "to file a Motion to Vacate the Trial Date, re-open discovery and certain pretrial deadlines on an expedited basis." (Exhibit I).

26. On August 10, 2016, the court in the Collens Suit granted the Maxim Defendants' motion to vacate the August 29, 2016 trial date. (Exhibit F at p. 12). On August 11, 2016, the court denied Collens's motion to strike the Maxim Defendants' expert reports. (*Id.*). On August 29, 2016, the court entered a new pretrial order, which

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*                Page 7
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 7 of 59

set a February 27, 2017 deadline for expert reports and set trial for June 14, 2017. (*Id*. at p. 13).

27.    On December 30, 2016, the Hozubin Defendants retained Christina P. Tapia, Ph.D. as an expert economist for the Maxim Defendants.    On January 17, 2017, the Hozubin Defendants submitted the Maxim Defendants' Fourth Supplement to Preliminary Witness List Including Retained Experts in the Collens Suit ("January 2017 Witness List"), which identified Dr. Tapia and Laura Opson as experts in economic damages and medical treatments and costs, but did not provide any expert reports.    (A true and correct copy of the January 2017 Witness List is attached as Exhibit J.).

28.    On February 27, 2017, the deadline to submit expert reports in the Collens Suit passed.  The Maxim Defendants did not submit any expert reports on or before the court's February 27, 2017 deadline.  (*See* Exhibit F at pp. 13-14).

29.    By correspondence to Hozubin dated March 6, 2017 ("March 6, 2017 Correspondence"), Collens's counsel stated, "I have not received any expert reports which were due one week ago.  Is it safe for me to assume that you are not calling any experts at trial?"   (A true and correct copy of the March 6, 2017 Correspondence is attached as Exhibit K.).

30.    By correspondence to Collens's counsel dated March 7, 2017 ("March 7, 2017 Correspondence"), Hozubin stated "[s]ince [Mr. Fountaine] is no[w] interviewing [Collens] I can get the necessary info that way, get report to you and get

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 8
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG    Document 1    Filed 07/19/19    Page 8 of 59

expert depos set at the end of the month as we had discussed." (A true and correct copy of the March 7, 2017 Correspondence is attached as Exhibit L.).

31.     On March 23, 2017, Collens filed a second motion to strike the Maxim Defendants' experts ("March 2017 Motion to Strike") on the basis the Maxim Defendants failed to timely file expert reports or rebuttal reports despite a seven month extension to do so. (A true and correct copy of the March 2017 Motion to Strike is attached as Exhibit M.).

32.     By correspondence dated March 28, 2017, Hozubin advised Collens's counsel "[w]e need to get things back on schedule[,]" to which he responded:

> We need to establish better communication between us or this trial and pre-trial work is going to be more contentious then it needs to be. . . . Regarding possible settlement, we greed [sic] that we either would have to exchange offers or agree to mediate within a range, and that it would be best if we first exchanged reports. You have had plaintiff's expert reports since July, 2016. You indicated that you would get me your expert reports on or before the deadline and that we could schedule expert depos for the end of March. Since your experts were in the Seattle area, you suggested doing a follow up depo of Jesse and his mother while we were down in Seattle. In other words, you would depose Jesse and his mother after you had served your expert reports.
>
> The deadline for you to serve your expert reports came and went and you produced no reports and did not ask for an extension. You also do [sic] not get back to me as promised regarding the depositions I requested and your reconsideration of your objections thereto. . . . Now, here we are at the end of March and it is not at all clear to me whether you intend to argue that you may still call experts and, if so, what experts. It is not clear to me that you intend to produce expert reports and, if so, when?

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*     Page 9
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 9 of 59

(March 28, 2017 Correspondence from Stehle to Hozubin ("March 28, 2017 Correspondence"). A true and correct copy of the March 28, 2017 Correspondence is attached as Exhibit N.).

33. By correspondence dated April 4, 2017, the Hozubin Defendants provided Maxim with a copy of Collens's March 2017 Motion to Strike.

34. On April 5, 2017, the Maxim Defendants filed a response to Collens's March 2017 Motion to Strike and contended "the reports were wanted in advance of the expert depositions, none of which have been scheduled as of this date." (A true and correct copy of the Maxim Defendants' April 5, 2017 Response to the March 2017 Motion to Strike is attached as Exhibit O.).

**D. Order Excluding the Maxim Defendants' Experts and Related Communications.**

35. By order dated April 12, 2017 ("April 2017 Order"), the court in the Collens Suit granted Collens's motion to strike the Maxim Defendants' experts and exclude their testimony at trial. (A true and correct copy of the April 2017 Order is attached as Exhibit P.).

36. The April 2017 Order states:

The briefing demonstrates that there was no agreement to extend the February 27, 2017 deadline for expert reports. Even if there had been an agreement of counsel, the defendants still needed a court order to extend the deadline. Defendants did <u>not</u> seek an extension of the deadline. This case has been continued at least three times. The last extension was for the express purpose of giving defendants additional time to get damage experts and provide reports. That didn't happen. There is no more time for it to happen. Trial is going to begin June 19, 2017. There will be no more continuances or extensions.

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,      Page 10
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 10 of 59

(Exhibit P at 1).

37.     By correspondence to Maxim dated April 24, 2017, in which Hozubin discussed the April 2017 Order, she stated "I am not overly concerned because we have the information to impeach [Collens's] experts and [another fact witness] is slated to testify about everything our other expert was going to testify about."    (*See*, *e.g.*, Exhibit C ¶ 24; Exhibit D ¶ 24).

38.     In April and May, 2017, extensive communications and correspondence were exchanged between Hozubin and Maxim regarding the cause, significance, and response to the April 2017 Order.

39.     The Maxim Defendants filed a motion for reconsideration of the April 2017 Order and, by order dated May 15, 2017 ("May 2017 Order"), the court denied the Maxim Defendants' motion for reconsideration.   (A true and correct copy of the May 2017 Order is attached as Exhibit Q.).

40.     The May 2017 Order states, in part:

> This case has been continued four times.  Last fall the defendants failed to meet court-ordered expert witness deadlines.  Rather than enter sanctions, the court continued the case for a lengthy period of time so that defendants could get new experts and/or conduct discovery involving plaintiff's experts.
>
> Shockingly, defendants did virtually nothing before the next round of deadlines. While defendants belatedly named experts, defendants filed no expert report by the new court ordered deadline and got no court order to extend the deadlines.  There was no agreement of the parties to extend the deadlines.  Even with the missed deadlines for experts, defendants have now still done nothing to produce expert reports.

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*          Page 11
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 11 of 59

In all of the briefing defendants' counsel has offered no cogent explanation for her egregious conduct in failing to follow the pre-trial order.

(Exhibit Q at 2-3).

###### E. Mediation and Case Valuation

41. Collens, upon information and belief, was interested in mediating his claims against the Maxim Defendants and was willing to mediate as late as June 2017, shortly before trial in the Collens Suit was scheduled to commence.

42. Collens, upon information and relief, requested a "high-low" format for the mediation, with a lower floor in the $200,000 range.

43. In a May 17, 2017 pretrial report from the Hozubin Defendants to Maxim, the Hozubin Defendants estimated the highest verdict to which Maxim might be exposed at trial was less than $300,000. (*See*, *e.g.*, Exhibit C ¶ 25; Exhibit D ¶ 25).

44. By correspondence dated May 26, 2017, Hozubin informed Collens's counsel the Maxim Defendants would not agree to mediation in the format Collens requested ("high-low"), and the case proceeded to trial in June 2017.

###### F. June 2017 Trial and Post-Judgment Motions

45. The seven-day bench trial in the Collens Suit commenced on June 19, 2017 and concluded on July 10, 2017. On August 24, 2017, the court issued its findings of fact and conclusions of law. (Exhibit B)

46. In the Collens Suit, the court found for Collens as to breach of contract, violation of Alaska's UTPA, intentional infliction of emotional distress, misrepresentation, and punitive damages and awarded Collens: $1,439,578 for past

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 12
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 12 of 59

breach of contract (Maxim only); $2,875,429 for future breach of contract (Maxim only); treble breach of contract damages under Alaska's UTPA ($12,945,021) (Maxim Defendants jointly and severally); $400,000 for emotional distress (Maxim Defendants jointly and severally); and $500,000 for punitive damages (Maxim Defendants jointly and severally), for a total of $18,160,028. (Exhibit B ¶¶ 25, 47, 49, 54 (Conclusions of Law)).

47.     By correspondence dated September 11, 2017, the assistant general counsel for Maxim, Carrie O'Brien, advised Hozubin that Gregory Fisher of Davis, Wright, Tremaine LLP would handle the Maxim Defendants' appeal in the Collens Suit.

48.     On September 29, 2017, with Mr. Fisher as counsel, the Maxim Defendants filed their Combined Rule 52(b) and Rule 59 Post-Judgment Motion for Relief to amend and/or alter the judgement or for a new trial ("Post-Judgment Motion"). (A true and correct copy of the Post-Judgment Motion is attached as Exhibit R.).

49.     In support of their motion, the Maxim Defendants argued, in part:

> The Court went too far when it prevented defendants from presenting their expert testimony. Defendants never violated any court order. Instead, defense counsel missed a technical deadline in mistaken reliance on what she thought was an agreement or understanding with Plaintiff's counsel to serve the expert reports after the defense experts had a chance to interview Plaintiff at a continued deposition.

(Exhibit R at 3, 21).

50.     By correspondence dated October 9, 2017, Ms. O'Brien notified Hozubin of "Maxim's decision to fully transfer this matter to Gregory Fisher and his team at this

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,     Page 13
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 13 of 59

time" and requested Hozubin send an executed copy of the removal of her appearance from the Collens Suit.

51. On October 9, 2017, Hozubin filed her motion to withdraw as counsel for the Maxim Defendants in the Collens Suit. (Exhibit F at p. 22).

52. On December 8, 2017, the court in the Collens Suit denied the Maxim Defendants' Post-Judgment Motion. (Exhibit F at p. 24).

53. By order dated December 15, 2017, the court in the Collens Suit entered an amended final judgment ("Amended Final Judgment") against the Maxim Defendants, which awarded Collens a total of $14,904,503.99, including $13,345,022 for contract and treble damages, $500,000 in punitive damages, $1,059,481.99 for prejudgment interest, and $23,555.80 for costs. (A true and correct copy of the Amended Final Judgment is attached as Exhibit S.).

54. As part of the Amended Final Judgment, the court in the Collens Suit awarded Collens $5,676,668.17 in Rule 82 attorneys' fees. (Exhibit S ¶ 1(e); Exhibit F at p. 25).

## II. **December 2017 Demand Letter**

55. By correspondence to the Hozubin Defendants dated December 12, 2017 ("December 2017 Demand Letter"), prior to entry of the Amended Final Judgment in the Collens Suit, Maxim alleged "negligence and malpractice" by the Hozubin Defendants while representing the Maxim Defendants in the Collens Suit. (December 2017 Demand

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 14
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 14 of 59

Letter at 1. A true and correct copy of the December 2017 Demand Letter is attached as Exhibit T.).

56. In the December 2017 Demand Letter, Maxim alleged the following examples of "negligence and malpractice" by the Hozubin Defendants: (a) "failure to meet the Court's expert deadline and mitigate the failure"; (b) "failure to request a jury trial and properly consult with" Maxim regarding the same, including the failure to properly advise Maxim "of the benefits to trying [the Collens Suit] before a jury"; (c) "failure to prepare witnesses for trial"; and (d) "failure to make an offer of proof identifying what experts [the Hozubin Defendants] intended to call or what those experts would say." (Exhibit T at 1, 2).

57. Maxim further alleged: (a) "the harm caused by [the Hozubin Defendants'] failure to disclose and obtain expert reports to comply with the Court's deadlines and lackadaisical conduct resulted in an extravagant judgment against [the Maxim Defendants] as defense experts were precluded from testifying at trial[;]" (b) "[a]s a result of [the Hozubin Defendants'] failure to properly disclose experts, [Collens] was able to present uncontroverted expert evidence which resulted in an award to [Collens] for $15,178,058.00 which does not yet include attorney's fees or post-judgment interest accrued[;]" and (c) "[t]here can be no dispute that the 'egregious conduct in failing to follow the pre-trial order' after over a year continuance is a breach of the duty to use 'skill, prudence, and diligence' as other members of the profession possess and exercise." (Exhibit T at 2).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,          Page 15
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 15 of 59

58.     Maxim demanded the Hozubin Defendants provide the December 2017 Demand Letter to the Hozubin Defendants' insurance carrier, advised of a January 18, 2018 mediation in the Collens Suit, and demanded $16 million to settle the Maxim Defendants' claim ("Claim") against the Hozubin Defendants.  (Exhibit T at 3).

59.     By correspondence dated December 24, 2017 ("December 24, 2017 Correspondence"), the Hozubin Defendants provided ALPS with notice of the Claim and a copy of the December 2017 Demand Letter.

## III.    Maxim Defendants' Appeal and the Alaska Supreme Court's July 2019 Opinion

60.     On December 19, 2017, the Maxim Defendants filed an appeal ("December 19, 2017 Appeal") of the Amended Final Judgment with the Alaska Supreme Court.  (A true and correct copy of the December 19, 2017 Appeal is attached as Exhibit U.).

61.     In the Statement of Points on Appeal included in the December 19, 2017 Appeal, the Maxim Defendants contend, *inter alia*, the lower court's preclusion of the Maxim Defendants' experts resulted in an abuse of discretion and unfair prejudice to the Maxim Defendants.  (Exhibit U).

62.     On April 27, 2018, the Maxim Defendants submitted their appeal brief ("Maxim Appeal Brief") in the appeal pending in the Alaska Supreme Court as Case No. S-16930; the Maxim Appeal Brief raised multiple issues for review, including:

> Whether the Superior Court abused its discretion by precluding defense experts from testifying regarding damages because of a late disclosure of

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 16
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 16 of 59

their expert reports, where trial counsel mistakenly believed she had an agreement to extend the disclosure deadline[.]

(Maxim Appeal Brief at 2. A true and correct copy of the Maxim Appeal Brief is attached as Exhibit V.).

63. Oral arguments in Maxim Defendants' appeal occurred on November 13-14, 2018.

64. By opinion dated July 12, 2019 ("July 2019 Opinion"), the Alaska Supreme Court affirmed the Amended Final Judgment on "all [ ] issues" other than the trial court's attorneys' fee award, which the Alaska Supreme Court determined to be "unreasonable". (July 2019 Opinion at 2. A true and correct copy of the July 2019 Opinion is attached as Exhibit W.).

65. In the July 2019 Opinion, the Alaska Supreme Court determined: (a) "Maxim is liable under the UTPA;" (b) Maxim's "conduct is clearly subject to sanctions under the [UPTA]"; (c) "[t]he superior court's decision to preclude Maxim from presenting expert testimony on damages was not an abuse of discretion"; (d) the superior "court's damages assessment was not excessive"; (e) "the superior court's award of punitive damages was not erroneous"; and (f) "it was not error for the superior court to conclude that Collens could claim both punitive and treble damages for the same conduct." (Exhibit W at 6, 26, 28).

66. With respect to the $5,676,668.17 attorneys' fee award in the Collens Suit, the Alaska Supreme Court determined the superior court "erred in its assessment of full reasonable attorney's fees", reversed "the superior court's attorney's fee award", and

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,     Page 17
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 17 of 59

remanded on that issue alone "for an award based on a reasonable rate for the services, as calculated using the modified lodestar method[.]" (Exhibit W at 6).

## IV.  **January 2019 Demand Letter**

67.    Prior to the July 2019 Opinion, by correspondence to the Hozubin Defendants and ALPS dated January 18, 2019 ("January 2019 Demand Letter"), Maxim supplemented its December 2017 Demand Letter.   (A true and correct copy of the January 2019 Demand Letter is attached as Exhibit X.).

68.    In the January 2019 Demand Letter, Maxim reiterated its "negligence and malpractice" allegations against the Hozubin Defendants and further alleged it had "conducted an investigation into existence of all potential malpractice claims and are prepared to filed suit against" the Hozubin Defendants, the Lynch Estate, and others. (Exhibit X at 1).

69.    In the January 2019 Demand Letter, Maxim added the following alleged examples of "negligence and malpractice" to those previously alleged in the December 2017 Demand Letter: (a) the Hozubin Defendants failed to develop "counter arguments to any degree of skill, prudence and diligence as to the Unfair Trade Practices Act" claim; (b) "[d]espite the existence of an affirmative defense that could exempt Maxim from application of the UTPA and the implication of treble damages, the UTPA exemption was never argued by [the Hozubin Defendants] in Maxim's motion for a directed verdict[,] [n]or was evidence supporting the exemption developed to a reasonable degree of skill and prudence at trial"; (c) "[i]n the preparatory stages prior to

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*                    Page 18
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 18 of 59

trial, there was a complete failure of due diligence in the investigation and preparation of the case for trial"; and (d) the Hozubin Defendants failed "to properly analyze and evaluate" Collens's claims in the Collens Suit "to a reasonable degree of 'skill, prudence and diligence[.]'"  (Exhibit X at 2).

70.     Maxim demanded the Hozubin Defendants provide a copy of "all applicable malpractice and insurance policies" and increased its demand to $21,004,726.00 plus post-judgment interest to settle the Claim.  (Exhibit X at 3).

## V.     The Suits

71.     On May 8, 2019, Maxim filed the Maxim Suit against the Hozubin Defendants and the Lynch Defendants.  (Exhibit C ¶¶ 2-7).  On May 10, 2019, Adkins filed the Adkins Suit against the Hozubin Defendants and the Lynch Defendants.  (Exhibit D ¶¶ 2-7).  The Suits allege legal malpractice and unfair trade practices arising out of the representation of the Maxim Defendants in the Collens Suit by Lynch, the Lynch Firm, and the Hozubin Defendants.  (Exhibit C; Exhibit D).  By order dated June 19, 2019, the Suits were consolidated.

### A.     Maxim Suit

72.     In the Maxim Suit, Maxim alleges it hired Lynch, the Lynch Firm, and the Hozubin Defendants to represent it in the Collens Suit.  (Exhibit C ¶ 11).  Maxim alleges Lynch was "lead counsel" for Maxim in the Collens Suit until his death on or around April 5, 2016, after which Hozubin became Maxim's lead counsel in the Collens Suit.  (*Id.* ¶¶ 11-12).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 19
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 19 of 59

73.    On September 26, 2017, after a bench trial in the Collens Suit, Maxim alleges the trial court entered the Amended Final Judgment "in favor of Collens, and against Maxim, in the amount of $20,379,727.96."  (Exhibit C ¶¶ 13-15).

74.    Maxim alleges Lynch, the Lynch Firm, and the Hozubin Defendants committed legal malpractice in connection with, *inter alia*, the handling of expert witness reports, Collens's UTPA claim, the Hozubin Defendants' pre-trial risk analysis and valuation of the Collens Suit, and advice regarding whether to request a jury trial in the Collens Suit.  (Exhibit C ¶¶ 35-39).

75.    With respect to the handling of expert witness reports, Maxim alleges Lynch, the Lynch Firm, and the Hozubin Defendants: (a) "failed to meet court-ordered expert witness deadlines"; (b) "repeatedly failed to provide expert reports to Collens before the expiration of the court-ordered deadlines" and "[a]s a consequence . . . , Collens' experts were the only experts to present expert testimony at trial and that expert testimony went unrebutted by Maxim"; and (c) "failed to make an offer of proof, either orally or in written form, as to the content of th[e] stricken and excluded expert testimony" after the trial court struck Maxim's expert witnesses. (Exhibit C ¶¶ 17, 19, 22, 23).  Maxim further alleges, in "communications . . . made with the intent to deceive Maxim", Hozubin "intentionally mischaracterized the import of the court's ruling that excluded Maxim's expert witnesses".  (*Id.* ¶ 26).

76.    With respect to the handling of Collens's UTPA claim in the Collens Suit, Maxim alleges: (a) the Hozubin Defendants failed to amend the Maxim Defendants'

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                      Page 20
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 20 of 59

answer "to include an affirmative defense to Collens' claim that Maxim violated [the UTPA]", which "prevented Maxim from obtaining and relying upon any such exemption at trial and on appeal"; (b) the Hozubin Defendants "failed to move for a directed verdict on Collens' UTPA claim at the Collens trial"; and (c) "[i]f Maxim had successfully obtained an exemption to the application of the UTPA in the Collens litigation, treble damages [and actual attorney's fees] would not have been awarded." (Exhibit C ¶¶ 27-31).

77.     With respect to the Hozubin Defendants' valuation of the Collens Suit and advice regarding settlement, Maxim alleges: (a) "Collens offered to settle his claims in advance of trial for $6,000,000, and Maxim could have settled all claims brought against it for that amount"; (b) the Hozubin Defendants, however, "provided Maxim a pre-trial evaluation concluding that if the court were to award damages in accordance with Collens' methodology, that award would total less than $300,000"; (c) in "communications . . . made with the intent to deceive Maxim", Hozubin "intentionally misled Maxim as to the potential size of the likely damage award"; (d) the Hozubin Defendants' "negligence, misrepresentation, and deceit" with respect to the Hozubin Defendants' pre-trial valuation of the Collens Suit "caused Maxim to reject Collens' settlement offer, which led to Maxim suffering an ascertainable loss of money as a result of the increased verdict award"; and (e) Lynch, the Lynch Firm, and the Hozubin Defendants "failed to advise Maxim as to the potential benefits of trying the Collens

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 21
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 21 of 59

[Suit] to a jury at a time when a jury could still have been requested." (Exhibit C ¶¶ 25-26, 32-34).

78.     In Maxim's first claim for relief, for legal malpractice, Maxim alleges Lynch, the Lynch Firm, and the Hozubin Defendants "breached their duty to Maxim in numerous ways, including but not limited to:"

a.      Failing to ensure that pre-trial deadlines were met with regard to the identification of Maxim's expert witnesses and the provision of their expert reports;

b.      Failing to make an offer of proof of the expert witnesses' reports and/or testimony after the trial court issued an order striking them from testifying at the Collens trial;

c.      Failing to assert an affirmative defense that could exempt Maxim from the application of the UTPA;

d.      Failing to move for a directed verdict on Collens's UTPA claims; and

e.      Failing to adequately advise Maxim as to the potential size of a damage award that could result from the trial court having struck all of Maxim's expert witnesses.

(Exhibit C ¶ 37).   Maxim alleges Lynch's, the Lynch Firm's, and the Hozubin Defendants' "negligence resulted in a monetary loss to Maxim in excess of $100,000." (*Id.* ¶ 38).

79.     In Maxim's second claim for relief, for violation of the UTPA, Maxim alleges: (a) Lynch, the Lynch Firm, and the Hozubin Defendants "provided legal services to Maxim in the conduct of trade or commerce"; (b) "Maxim was a consumer of [Lynch's, the Lynch Firm's, and the Hozubin Defendants'] legal services"; and (c) "[i]n the course of providing legal services to Maxim, [Lynch's, the Lynch Firm's, and the

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*                    Page 22
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 22 of 59

Hozubin Defendants'] conduct included acts and/or practices that were unfair and/or deceptive." (Exhibit C ¶¶ 41-43).

80. Maxim further alleges Lynch's, the Lynch Firm's, and the Hozubin Defendants' "acts caused Maxim an ascertainable loss of money in an amount in excess of $100,000" and their "violation of the UTPA makes them liable to Maxim for treble damages and full reasonable attorneys' fees." (Exhibit C ¶¶ 44-45).

81. In Maxim's prayer for relief, Maxim seeks: (a) an unspecified amount of monetary relief in excess of $100,000; (b) costs; (c) pre-judgment interest; (d) attorney's fees; and (e) "such further legal and equitable relief as the Court may find just and proper." (Exhibit C, Prayer for Relief).

**B.    Adkins Suit**

82. In the Adkins Suit, Adkins alleges Lynch, the Lynch Firm, and the Hozubin Defendants were hired to represent Adkins and Maxim in the Collens Suit. (Exhibit D ¶ 11). Adkins alleges Lynch and the Lynch Firm represented the Maxim Defendants in the Collens Suit until Lynch's death on or around April 5, 2016, after which the Hozubin Defendants became Maxim's lead counsel in the Collens Suit. (*Id*. ¶¶ 11-12).

83. On September 26, 2017, after a bench trial in the Collens Suit, Adkins alleges the trial court entered the Amended Final Judgment "in favor of Collens, and against Maxim and Adkins jointly in the amount of $20,379,727.96." (Exhibit D ¶¶ 13-15).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                     Page 23
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 23 of 59

84. Adkins alleges Lynch, the Lynch Firm, and the Hozubin Defendants committed legal malpractice in connection with, *inter alia*, the handling of expert witness reports, Collens's UTPA claim, the Hozubin Defendants' pre-trial risk analysis and valuation of the Collens Suit, and advice provided Adkins regarding, *inter alia*, requesting a jury trial and obtaining independent counsel. (Exhibit D ¶¶ 35-39).

85. With respect to the handling of expert witness reports, Adkins alleges: (a) Lynch, the Lynch Firm, and the Hozubin Defendants, "despite ample time to retain experts and obtain expert reports, . . . failed to meet court-ordered expert witness deadlines in the Collens [Suit]"; (b) the Hozubin Defendants "repeatedly failed to provide expert reports to Collens before the expiration of the court-ordered deadlines" and as a result, "Collens' experts were the only experts to present expert testimony at trial and that expert testimony went unrebutted by Maxim"; (c) the Hozubin Defendants "failed to make an offer of proof, either orally or in written form, as to the content of th[e] stricken and excluded expert testimony" after the trial court struck the Maxim Defendants' expert witnesses; and (d) in "communications . . . made with the intent to deceive" the Maxim Defendants, Hozubin "intentionally mischaracterized the import of the court's ruling that excluded [the Maxim Defendants'] expert witnesses". (Exhibit D ¶¶ 17, 19, 22-23, 26).

86. With respect to the Hozubin Defendants' handling of Collens's UTPA claim in the Collens Suit, Adkins alleges: (a) the Hozubin Defendants failed to amend the Maxim Defendants' answer "to include an affirmative defense to Collens' claim that [the Maxim Defendants] violated [the UTPA]", which "prevented [the Maxim

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,      Page 24
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG    Document 1    Filed 07/19/19    Page 24 of 59

Defendants] from obtaining and relying upon any such exemption at trial and on appeal";
(b) the Hozubin Defendants "failed to move for a directed verdict on Collens' UTPA
claim at the Collens trial"; and (c) the Hozubin Defendants "would have successfully
obtained an exemption to the application of the UTPA in the Collens litigation, had an
exemption been pled by [the Hozubin Defendants], and treble damages [and actual
attorney's fees] would not have been awarded."  (Exhibit D ¶¶ 27-31).

87.     With respect to the Hozubin Defendants' valuation of the Collens Suit and
advice regarding settlement, Adkins alleges: (a) "Collens offered to settle his claims in
advance of trial for $6,000,000, and [the Maxim Defendants] could have settled all claims
brought against it for that amount"; (b) the Hozubin Defendants, however, "provided
[the Maxim Defendants] with a pre-trial evaluation concluding that if the court were to
award damages in accordance with Collens' methodology, that award would total less
than $300,000"; (c) in "communications . . . made with the intent to deceive" the Maxim
Defendants, Hozubin "intentionally misled [the Maxim Defendants] as to the potential
size of the likely damage award"; (d) the Hozubin Defendants' "negligence,
misrepresentation, and deceit" with respect to the Hozubin Defendants' pre-trial
valuation of the Collens Suit "caused [the Maxim Defendants] to reject Collens'
settlement offer, which led to an entry of Judgment against Adkins and Maxim in the
amount of $20,379,727.96"; and (e) Lynch, the Lynch Firm, and the Hozubin Defendants
"failed to advise [the Maxim Defendants] as to the potential benefits of trying the Collens

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 25
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 25 of 59

[Suit] to a jury at a time when a jury could still have been requested." (Exhibit D ¶¶ 25-26, 32-34).

88.     In Adkins' first claim for relief, for legal malpractice, Adkins alleges Lynch, the Lynch Firm, and the Hozubin Defendants "breached their duty to [Adkins] in numerous ways, including but not limited to:"

    a.    Failing to ensure that pre-trial deadlines were met with regard to the identification of [the Maxim Defendants'] expert witnesses and the provision of their expert reports;

    b.    Failing to request a jury trial;

    c.    Failing to properly advise [Adkins] of the advisability of independent counsel for herself;

    d.    Failure to adequately report to and provide advice to [Adkins; and]

    e.    Failure to take appropriate steps to resolve the litigation without the necessity of a trial.

(Exhibit D ¶ 37).

89.     Adkins alleges the Hozubin Defendants further "breached their duty to [Adkins] in numerous ways, including but not limited to:"

    a.    Failing to make an offer of proof of the expert witnesses' reports and/or testimony after the trial court issued an order striking them from testifying at the Collens trial;

    b.    Failing to properly prepare [Adkins] for her deposition and testimony at trial;

    c.    Failing to assert an affirmative defense that could exempt [the Maxim Defendants] from the application of the UTPA;

    d.    Failing to move for a directed verdict on Collens's UTPA claims;. . .

    e.    Failing to adequately advise [the Maxim Defendants] as to the potential size of a damage award that could result from the trial court having struck all of [the Maxim Defendants'] expert witnesses[; and]

    f.    Providing false and misleading advice as to the risks of an adverse verdict at trial.

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*    Page 26
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 26 of 59

(Exhibit D ¶ 38). Adkins alleges the breaches committed by Lynch, the Lynch Firm, and the Hozubin Defendants "proximately caused injury to [Adkins], in excess of the jurisdictional requirements" of the court. (*Id*. ¶ 39).[2]

90.    In Adkins' second claim for relief, for violation of the UTPA, Adkins alleges: (a) Lynch, the Lynch Firm, and the Hozubin Defendants "provided legal services to [Adkins] in the conduct of trade or commerce"; (b) Adkins "was a consumer of [Lynch's, the Lynch Firm's, and the Hozubin Defendants'] legal services"; and (c) "[i]n the course of providing legal services to [Adkins], [Lynch's, the Lynch Firm's, and the Hozubin Defendants'] conduct included acts and/or practices that were unfair and/or deceptive." (Exhibit D ¶¶ 41-43).

91.    Adkins further alleges Lynch's, the Lynch Firm's, and the Hozubin Defendants' "actions caused [Adkins] an ascertainable loss of money in an amount in excess of $100,000" and their "violation of the UTPA makes them liable to [Adkins] for treble damages and full reasonable attorney fees." (Exhibit D ¶¶ 44-45).

92.    In Adkins' prayer for relief, Adkins seeks: (a) an unspecified amount of monetary relief in excess of "the jurisdictional requirements" of the court; (b) costs; (c) pre-judgment interest; (d) attorney's fees; and (e) "such further legal and equitable relief as the Court may find just and proper." (Exhibit D, Prayer for Relief).

---

[2] Paragraph 39 of the Adkins Complaint is numbered incorrectly as a second paragraph 38.

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 27
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 27 of 59

## VI. The Policies

### A. Hozubin Policy

93. On May 31, 2017, Hozubin executed an application ("2017 Hozubin Application") on behalf of the Named Insured, Hozubin & Associates d/b/a Hozubin Moberly Lynch & Associates, for Lawyers Professional Liability Insurance Policy No. ALPS14290-7 issued by ALPS to the Hozubin Firm for the policy period August 1, 2017 to August 1, 2018 ("Hozubin Policy").

94. In the 2017 Hozubin Application, Hozubin answered "No" to the question: "Are you or any member of the firm aware of or do you or any member of your firm have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against any current or former attorney in the firm or its predecessors, regardless of the merit of such claim that has not already been reported to ALPS?"

95. On the Individual Attorney Supplement to the 2017 Hozubin Application Hozubin executed on May 26, 2017, she answered "No" to the question: "Are you aware of or do you have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against you, regardless of the merit of such claim?"

96. ALPS issued the Hozubin Policy to the Hozubin Firm for the period August 1, 2017 to August 1, 2018. (A true and correct copy of the Hozubin Policy is attached as Exhibit Y.).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*     Page 28
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 28 of 59

97.    Hozubin is an insured attorney under the Hozubin Policy.  (Exhibit Y, Declarations Item 2).

98.    Lynch is an insured attorney under the Hozubin Policy subject to a retroactive date of August 1, 2015.  (Exhibit Y, Definitions § 2.15.3).

99.    The Hozubin Policy provides legal professional liability insurance on a claims made and reported basis.  (Exhibit Y, Insuring Agreements § 1.1).

100.    The Hozubin Policy's insuring agreement states, in relevant part:

Subject to the Limit of Liability, exclusions, conditions and other terms of this Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that:

1.1.1  the Claim arises from an act, error, omission or Personal Injury that happened on or after the Loss Inclusion Date and the Retroactive Coverage Date set forth in Items 2 and 3 of the Declarations, and that the Claim arises from or is in connection with:

(a)    an act, error or omission in Professional Services that were or should have been rendered by the Insured, or

(b)    a Personal Injury arising out of the Professional Services of the Insured;

1.1.2  at the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or Personal Injury might be the basis of a Claim.

* * *

1.2.1 . . . The Company shall not have a duty to defend or pay such expenses as to any Claim not covered under this Policy, and shall have the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 29
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 29 of 59

any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims.

(Exhibit Y, Insuring Agreements §§ 1.1-1.2.1).

101.   "Damages" is defined in the Hozubin Policy as "any monetary award by way of judgment or final arbitration, or any settlement"; the Hozubin Policy specifically excludes from the definition of "Damages":

2.6.1   punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, regardless against whom the same is levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding; or

2.6.2   awards deemed uninsurable by law; or

2.6.3   injunctive, declaratory, or other equitable relief, or costs or fees incident thereto; or

2.6.4   restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; or

2.6.5   any injury or damage to, destruction of, loss of, or loss of use of any funds or property.

(Exhibit Y, Definitions § 2.6).

102.    The Hozubin Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an Insured, or any Personal Injury arising from such conduct[.]" (Exhibit Y, Exclusions § 3.1.1) (emphasis in original).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*     Page 30
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 30 of 59

103.    The Hozubin Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny act, error, omission or Personal Injury that occurred prior to the Effective Date of this Policy, if . . . [p]rior to the Effective Date of this Policy, any Insured gave or should have given, to any insurer, notice of a Claim or potential Claim arising from the act, error, omission, or Personal Injury, or from any act, error, omission, or Personal Injury in Related Professional Services."    (Exhibit Y, Exclusions § 3.1.5(c)).

104.    The Hozubin Policy includes an endorsement designated "Excluded Entity Endorsement" with the form number "LPL-END-X-ENT (06-13)" ("Hozubin Policy Excluded Entity Endorsement"), which provides:

> No coverage is afforded under this Policy and this Policy does not apply to any actual or potential Claim arising from or in connection with any act, error, or omission in Professional Services rendered or that should have been rendered by the Insured in regard to the Insured's relationship with or work performed for or on behalf of [Lynch and Associates, P.C. d/b/a Hozubin, Moberly, Lynch & Associates, an association of corporations].

> No coverage is afforded under this Policy and this Policy does not apply to any actual or alleged facts, events, circumstances, transactions or matters relating to [Lynch and Associates, P.C. d/b/a Hozubin, Moberly, Lynch & Associates, an association of corporations].

(Exhibit Y, Hozubin Policy Excluded Entity Endorsement, Exclusions § 3).

**B.    Lynch Policy**

105.    ALPS    issued    Lawyers    Professional    Liability    Insurance    Policy No. ALPS1782-23 to the Lynch Firm for the policy period August 1, 2014 to

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*    Page 31
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 31 of 59

August 1, 2015 ("Lynch Policy"). A true and correct copy of the Lynch Policy is attached as Exhibit Z.

106. Lynch is an insured attorney under the Lynch Policy. (Exhibit Z, Declarations Item 2).

107. As the personal representative of the Lynch Estate, Mrs. Lynch is an insured under the Lynch Policy. (Exhibit Z, Definitions § 2.15.6).

108. The Lynch Policy provides legal professional liability insurance on a claims made and reported basis. (Exhibit Z, Insuring Agreements § 1.1).

109. The Lynch Policy's insuring agreement states, in relevant part:

Subject to the Limit of Liability, exclusions, conditions and other terms of this Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that:

1.1.1 the Claim arises from an act, error, omission or Personal Injury that happened on or after the Loss Inclusion Date and the Retroactive Coverage Date set forth in Items 2 and 3 of the Declarations, and that the Claim arises from or is in connection with:

(a) an act, error or omission in Professional Services that were or should have been rendered by the Insured, or

(b) a Personal Injury arising out of the Professional Services of the Insured;

* * *

1.2.1 . . . The Company shall not have a duty to defend or pay such expenses as to any Claim not covered under this Policy, and shall have the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*                    Page 32
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 32 of 59

any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims.

(Exhibit Z, Insuring Agreements §§ 1.1-1.2.1).

110.   "Damages" is defined in the Lynch Policy as "any monetary award by way of judgment or final arbitration, or any settlement"; the Lynch Policy specifically excludes from the definition of "Damages":

2.6.1   punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, regardless against whom the same is levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

2.6.2   awards deemed uninsurable by law;

2.6.3   injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

2.6.4   restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; or

2.6.5   any injury or damage to, destruction of, loss of, or loss of use of any funds or property

(Exhibit Z, Definitions § 2.6).

111.   The Lynch Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an Insured, or any Personal Injury arising from such conduct[.]" (Exhibit Z, Exclusions § 3.1.1) (emphasis in original).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*          Page 33
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 33 of 59

112.    The Lynch Policy includes an endorsement designated "Excluded Entity Endorsement" with the form number "LPL-END-X-ENT (06-13)" ("Lynch Policy Excluded Entity Endorsement"), which provides:

> No coverage is afforded under this Policy and this Policy does not apply to any actual or potential Claim arising from or in connection with any act, error, or omission in Professional Services rendered or that should have been rendered by the Insured in regard to the Insured's relationship with or work performed for or on behalf of [Hozubin and Associates, P.C. d/b/a Hozubin, Moberly, Lynch & Associates].
>
> No coverage is afforded under this Policy and this Policy does not apply to any actual or alleged facts, events, circumstances, transactions or matters relating to [Hozubin and Associates, P.C. d/b/a Hozubin, Moberly, Lynch & Associates].

(Exhibit Z, Lynch Policy Excluded Entity Endorsement, Exclusions § 3).

113.    The Lynch Policy includes an endorsement designated "Extended Reporting Period Endorsement" with the form number "LPL-END-ERP (06-14)" ("Lynch ERP Endorsement"), effective August 1, 2015, which provides: "the coverage afforded by the [Lynch] Policy . . . applies to Claims first made against [the Lynch Firm] and first provided to the Company during the Extended Reporting Period."  (Exhibit Z, Lynch ERP Endorsement, Conditions § 4.4).  Pursuant to the Lynch ERP Endorsement, there is no expiration date for the "Extended Reporting Period"; it is "unlimited".  (*Id*.).

114.    "Extended Reporting Period" is defined in the Lynch Policy to mean:

> [T]he period of time set forth in an Extended Reporting Period Endorsement that may be provided after the end of the Policy Period, as described in Section 4.4 of this Policy, for reporting of a Claim that: (a) would otherwise be covered by this Policy; (b) arises from an act, error or omission or Personal Injury that occurred after the Loss Inclusion Date and the Retroactive Coverage Date and before the end of the Policy Period;

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 34
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 34 of 59

and (c) is first made, and first reported to the Company, after the end of the Policy Period and during the Extended Reporting Period.

(Exhibit Z, Definitions § 2.12).

115.    The Lynch Policy includes an endorsement designated "Extended Reporting Period Coverage Limit Endorsement" with the form number "LPL-END-ERPLMT (06-13)" ("Lynch ERP Limit Endorsement"), which provides:

> 4.4.7  The Extended Reporting Period Endorsement simply extends the reporting period during which a claim may be first reported to the Company under this Policy.  Any Claim reported to the Company during the Extended Reporting Period shall be treated as if reported during the Policy Period.  The Extended Reported Period Endorsement does not create or establish a new or separate Limit of Liability.  Instead, the Company's Limit of Liability under an Extended Reporting Period Endorsement is part of, and not in addition to, the Company's Limit of Liability during the Policy Period.  For purposes of the Extended Reported Period, the Limit of Liability will not exceed Five Million Dollars ($5,000,000) which shall be the maximum amount the Company shall pay for all Claims first made and reported to the Company during the Extended Reporting Period.

(Exhibit Z, Lynch ERP Limit Endorsement, Conditions § 4.4.7).

116.    The Lynch Policy includes an endorsement designated "Anti-Stacking of Limits on Multiple Policies" with the form number "LPL-END-LCMP (06-13)" ("Lynch Anti-Stacking Endorsement"), which provides:

> 4.5.2  If two or more policies of insurance issued by the Company provide coverage to the Insureds for a Claim, or provide coverage to multiple Insureds for a claim based on an allegation of a legal relationship between such Insureds, then all such Claims shall be treated as a single Claim, and the maximum amount the Company shall be obligated to pay with respect to the Claim and in the aggregate on behalf of all such Insureds shall not exceed the highest single applicable limit of liability that remains available under any one policy.  The Limit of Liability under this Policy shall be reduced, and may be exhausted, by payments under this Policy and/or payments under such other policies issued by the Company.

(Exhibit Z, Lynch Anti-Stacking Endorsement, Conditions § 4.5.2).

## VII.    ALPS'S Coverage Position

117.   The first notice to ALPS of the Claim was made by the Hozubin Defendants in the December 24, 2017 Correspondence, by which the Hozubin Defendants provided ALPS with a copy of the December 2017 Demand Letter.

118.   By correspondence dated August 7, 2018 ("August 7, 2018 Correspondence"), ALPS provided its position regarding coverage under the Policies for the Hozubin Defendants with respect to the Claim, as initially articulated in the December 2017 Demand Letter.

119.   In the August 7, 2018 Correspondence, ALPS (a) denied coverage for the Hozubin Defendants under the Lynch Policy with respect to the Claim and (b) agreed to provide the Hozubin Defendants with a defense against the Claim under the Hozubin Policy subject to a complete reservation of ALPS's rights to deny coverage and reimbursement of defense costs, and ALPS has provided such defense.

120.   On May 8, 2019, Maxim filed the Maxim Suit against the Hozubin Defendants and the Lynch Defendants.  (Exhibit C ¶¶ 2-7).  On May 10, 2019, Adkins filed the Adkins Suit against the Hozubin Defendants and the Lynch Defendants. (Exhibit D ¶¶ 2-7).

121.   By correspondence to the Hozubin Defendants dated June 28, 2019 ("Hozubin June 28, 2019 Correspondence"), ALPS supplemented the August 7, 2018 Correspondence and provided its position regarding coverage under the Policies for the

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 36
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 36 of 59

Hozubin Defendants with respect to the Claim, as articulated in the December 2017 Demand Letter, the January 2019 Demand Letter, and the Suits.

122.    In the Hozubin June 28, 2019 Correspondence, ALPS (a) reiterated its denial of coverage for the Hozubin Defendants under the Lynch Policy with respect to the Claim and (b) agreed to continue to provide the Hozubin Defendants with a defense against the Claim under the Hozubin Policy subject to a complete reservation of ALPS's rights to deny coverage and reimbursement of defense costs, and ALPS has provided such defense.

123.    By correspondence to the Lynch Defendants dated June 28, 2019 ("Lynch June 28, 2019 Correspondence"), ALPS provided its position regarding coverage under the Policies for the Lynch Defendants with respect to the Claim, as articulated in the December 2017 Demand Letter, the January 2019 Demand Letter, and the Suits.

124.    In the Lynch June 28, 2019 Correspondence, ALPS agreed to provide the Lynch Defendants with a defense against the Claim under the Policies subject to a complete reservation of ALPS's rights to deny coverage and reimbursement of defense costs, and ALPS has provided such defense.

125.    As described in the Hozubin June 28, 2019 Correspondence and the Lynch June 28, 2019 Correspondence, ALPS's coverage position and the declaratory relief ALPS seeks in this Complaint is summarized as follows:

- The Hozubin Policy does not afford coverage to the Hozubin Defendants or the Lynch Defendants with respect to the Suits because: (a) prior to the Hozubin

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,          Page 37
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 37 of 59

Policy's August 1, 2017 effective date, an insured knew or reasonably should have known the acts, errors, or omissions prior to the effective date might be the basis of a claim, and the insureds failed to notify ALPS of a potential claim; (b) the exemplary damages sought by Maxim and Adkins in the Suits are not, and the attorney fees sought by them may not, be "Damages" within the Hozubin Policy's coverage; and (c) the Suits allege, and arise from or in connection with, dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful acts allegedly committed by the Hozubin Defendants and the Lynch Defendants.

- The Hozubin Policy does not afford coverage to actual or alleged acts, errors, or omissions by the Lynch Firm, or to Lynch, Hozubin, or anyone else for any act, error or omission on behalf of the Lynch Firm.

- The Lynch Policy does not afford coverage to the Hozubin Defendants with respect to the Suits because: (a) neither Hozubin nor the Hozubin Firm are an "Insured" as defined in the Lynch Policy; (b) the Lynch Policy does not afford coverage for and "does not apply to any actual or alleged facts, events, circumstances, transactions or matters relating to" the Hozubin Firm; and (c) all alleged acts, errors, or omissions from which the allegations against the Hozubin Defendants in the Suits arise, as well as all activities by the Hozubin Defendants with respect to the Collens Suit, were performed by, for, or on behalf of the Hozubin Firm.

- ALPS does not dispute the Lynch Policy affords coverage to the Lynch Defendants with respect to the Suits, subject to the terms of the Lynch Policy, for acts, errors, or omissions by the Lynch Firm or by Lynch, on behalf of the Lynch Firm, from on or around April 17, 2014 to July 31, 2015.

- The Lynch Policy does not afford coverage to the Lynch Defendants with respect to the Suits for any act, error or omission by Lynch on or after August 1, 2015 or on behalf of the Hozubin Firm.

- With respect to the limits of liability available to the Lynch Defendants under the Lynch Policy for the Suits, because the Claim—including, but not limited to, the Suits—was made and reported to ALPS during the Lynch Policy's Extended Reporting Period, the Lynch Policy provides, with respect to the Claim, limits of liability of $5,000,000 each claim and $5,000,000 in aggregate, subject to a $10,000 each claim deductible.

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 38
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 38 of 59

- To the extent the Lynch Policy and the Hozubin Policy both afford coverage to the Lynch Defendants with respect to the Claim—including, but not limited to, the Suits—the maximum amount ALPS shall be obligated to pay with respect to the Claim and in the aggregate, on behalf of the Lynch Defendants, cannot exceed the highest single applicable limit of liability that remains available under either the Lynch Policy or the Hozubin Policy.

**FIRST CAUSE OF ACTION**

**(For a Declaration the Hozubin Policy Does Not Afford Coverage to the Hozubin Defendants or the Lynch Defendants With Respect to the Suits – Against All Defendants)**

126. ALPS incorporates and realleges paragraphs 1 through 125 as if fully set forth herein.

127. The Hozubin Policy only provides coverage for claims if "at the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or Personal Injury might be the basis of a Claim[.]" (Exhibit Y, Insuring Agreements §§ 1.1-1.1.2).

128. The Hozubin Policy specifically excludes coverage for:

ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny act, error, omission or Personal Injury that occurred prior to the [August 1, 2017] Effective Date of this Policy, if . . . [p]rior to the [August 1, 2017] Effective Date of this Policy, any Insured gave or should have given, to any insurer, notice of a Claim or potential Claim arising from the act, error, omission, or Personal Injury, or from any act, error, omission, or Personal Injury in Related Professional Services[.]

(Exhibit Y, Exclusions § 3.1.5(c)) (emphasis in original).

129. In the Suits, the Maxim Defendants allege legal malpractice against Lynch, the Lynch Firm, and the Hozubin Defendants with respect to the failure to timely disclose

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,    Page 39
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 39 of 59

expert reports, which resulted in the exclusion of the Maxim Defendants' experts from trial in the Collens Suit. (Exhibit C ¶¶ 16-23, 37; Exhibit D ¶¶ 16-23, 37-38).

130. By the April 2017 Order, the court in the Collens Suit granted Collens's motion to strike the Maxim Defendants' experts and refused any further extension of time for expert or expert reports on behalf of the Maxim Defendants. (Exhibit P at 1).

131. Extensive communications between Hozubin and Maxim in April and May 2017 concerned the cause, significance, and response to the April 2017 Order.

132. In the May 2017 Order affirming exclusion of the Maxim Defendants' experts, the court specifically criticized the Hozubin Defendants for their "willful non-compliance with court orders", "egregious conduct", and "gross violation of the rules." (Exhibit Q at 3; Exhibit C ¶¶ 20-21; Exhibit D ¶¶ 20-21).

133. The Suits are outside the coverage afforded by the Hozubin Policy because: (a) prior to the August 1, 2017 effective date of the Hozubin Policy, an insured knew of the April 2017 Order striking the Maxim Defendants' experts, knew of the May 2017 Order affirming exclusion of the Maxim Defendants' experts based on, *inter alia*, the Hozubin Defendants' "willful non-compliance with court orders", "egregious conduct", and "gross violation of the rules[,]", and knew of Maxim's view of and response to those developments, and consequently knew or reasonably should have known of the allegations that form the basis of the Suits; (b) prior to the Hozubin Policy's August 1, 2017 effective date, an insured knew or reasonably should have known of acts, errors, or omissions that might be the basis of a claim; (c) prior to the Hozubin Policy's

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,            Page 40
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 40 of 59

August 1, 2017 effective date, an insured should have given ALPS notice of a potential claim against the Hozubin Defendants, Lynch, and the Lynch Firm arising from such acts, errors, or omissions; and (d) no insured notified ALPS of potential claims until December 24, 2017, after inception of the Hozubin Policy.

134.    The Hozubin Policy does not afford coverage for the Suits to the extent the relief the Maxim Defendants seek in the Suits does not constitute "Damages" as defined in the Hozubin Policy.  (Exhibit Y, Insuring Agreements § 1.1 & Definitions § 2.6).

135.    The Hozubin Policy specifically excludes from the definition of "Damages":

> 2.6.1    punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, regardless against whom the same is levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;
>
> 2.6.2    awards deemed uninsurable by law;
>
> 2.6.3    injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;
>
> 2.6.4    restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; or
>
> 2.6.5    any injury or damage to, destruction of, loss of, or loss of use of any funds or property.

(Exhibit Y, Definitions § 2.6).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 41
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 41 of 59

136.    In the Maxim Suit, Maxim seeks "treble damages and full reasonable attorney's fees" as relief for Maxim's UTPA cause of action against the Hozubin Defendants and the Lynch Defendants.  (Exhibit C ¶ 45).

137.    In the Adkins Suit, Adkins similarly seeks "treble damages and full reasonable attorney fees" as relief for Adkins' UTPA cause of action against the Hozubin Defendants and the Lynch Defendants.  (Exhibit D ¶ 45).

138.    The exemplary damages sought by Maxim and Adkins in the Suits are not, and the attorney fees[3] sought by them may not, be "Damages" within the Hozubin Policy's coverage.  (Exhibit Y, Definitions § 2.6; Exhibit C ¶ 45; Exhibit D ¶ 45).

139.    The Hozubin Policy does not afford coverage for the Suits to the extent any exclusions in the Hozubin Policy apply to exclude coverage.  (Exhibit Y, Exclusions § 3).

140.    The Hozubin Policy specifically excludes coverage for "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an Insured[.]"  (Exhibit Y, Exclusions § 3.1.1) (emphasis in original).

141.    In the Maxim Suit, Maxim alleges, *inter alia*: (a) Hozubin "intentionally mischaracterized the import of the court's ruling that excluded Maxim's expert witnesses" in the Collens Suit; (b) Hozubin "intentionally misled Maxim as to the

---

[3] The Hozubin Policy contains an endorsement designated "AK Fees" with the form number "LPL-END-AK-Fees (06/13)" ("Hozubin Policy AK Fees Endorsement").  To the extent the "attorney fees" sought in the Suits are pursuant to Alaska Rule of Civil Procedure 82, or awarded on any other basis and otherwise are within coverage, the fees are subject to the Hozubin Policy's limit of liability and will be outside coverage in the event the limit of liability is exhausted.  (*See* Exhibit Y, Hozubin Policy AK Fees Endorsement).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 42
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 42 of 59

potential size of the of the likely verdict" in the Collens Suit; (c) Hozubin's "communications were made with the intent to deceive Maxim as to the significance of the sanctions imposed against Maxim, and as to the potential size of the verdict" in the Collens Suit; (d) Lynch's, the Lynch Firm's, and the Hozubin Defendants' "misrepresentation, and deceit caused Maxim to reject Collens' settlement offer, which led Maxim to suffer[] an ascertainable loss of money as a result of the increased verdict award"; and (e) "[i]n the course of providing legal services to Maxim, [Lynch's, the Lynch Firm's, and the Hozubin Defendants'] conduct included acts and/or practices that were unfair and/or deceptive" in violation of the UTPA. (Exhibit C ¶¶ 26, 34, 43).

142.    In the Adkins Suit, Adkins alleges, *inter alia*: (a) Hozubin "intentionally mischaracterized the import of the court's ruling that excluded [the Maxim Defendants'] expert witnesses" in the Collens Suit; (b) Hozubin "intentionally misled [the Maxim Defendants] as to the potential size of the of the likely verdict" in the Collens Suit; (c) Hozubin's "communications were made with the intent to deceive [the Maxim Defendants] as to the significance of the sanctions imposed against [the Maxim Defendants] and the potential size of an adverse verdict" in the Collens Suit; (d) the Hozubin Defendants' "misrepresentation, and deceit caused [the Maxim Defendants] to reject Collens' settlement offer, which led to an entry of Judgment against Adkins and Maxim in the amount of $20,379,727.96"; and (e) "[i]n the course of providing legal services to [Adkins], [Lynch's, the Lynch Firm's, and the Hozubin Defendants'] conduct

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 43
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 43 of 59

included acts and/or practices that were unfair and/or deceptive" in violation of the UTPA. (Exhibit D ¶¶ 26, 34, 43).

143. The Suits are outside the coverage afforded by the Hozubin Policy because they allege, and arise from or in connection with, dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful acts allegedly committed by the Hozubin Defendants and the Lynch Defendants. (Exhibit Y, Exclusions § 3.1.1; Exhibit C ¶¶ 26, 34, 43; Exhibit D ¶¶ 26, 34, 43).

144. The Hozubin Policy specifically excludes coverage for "any actual or potential Claim arising from or in connection with any act, error, or omission in Professional Services rendered or that should have been rendered by the Insured in regard to the Insured's relationship with or work performed for or on behalf of [the Lynch Firm]." (Exhibit Y, Hozubin Policy Excluded Entity Endorsement, Exclusions § 3).

145. In the Maxim Suit, Maxim alleges Lynch "was initially Maxim's lead counsel, and he remained lead counsel until his death on or about April 5, 2016." (Exhibit C ¶ 11).

146. In the Adkins Suit, Adkins alleges Lynch "and his law firm, [the Lynch Firm,] was originally retained to represent Adkins and Maxim in the Collens litigation and Lynch and his firm remained in that position until Lynch's death on or about April 5, 2016." (Exhibit D ¶ 11).

147. Lynch, upon information and belief, represented the Maxim Defendants on behalf of the Lynch Firm from April 17, 2014 through July 31, 2015; from

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,    Page 44
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 44 of 59

August 1, 2015 through his incapacitation and passing in April 2016, Lynch represented the Maxim Defendants on behalf of the Hozubin Firm.

148.     The Hozubin Policy does not afford coverage to actual or alleged acts, errors, or omissions by the Lynch Firm, or to Lynch, Hozubin, or anyone else for any act, error or omission on behalf of the Lynch Firm.

149.     An actual controversy exists between ALPS and Defendants regarding whether the Hozubin Policy affords coverage for the Suits.

150.     Because the Suits are outside the coverage afforded by the Hozubin Policy, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring the Hozubin Policy does not afford coverage for the Suits and ALPS has no duty to defend or indemnify the Hozubin Defendants or the Lynch Defendants with respect to the Suits.

## SECOND CAUSE OF ACTION

### (For a Declaration the Lynch Policy Does Not Afford Coverage to the Hozubin Defendants With Respect to the Suits – Against All Defendants)

151.     ALPS incorporates and realleges paragraphs 1 through 150 as if fully set forth herein.

152.     Coverage under the Lynch Policy is limited to damages arising from or in connection with "A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD," provided that the claim arises from or is in connection with "an act, error or omission in Professional

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*                    Page 45
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 45 of 59

Services that were or should have been rendered by the Insured[.]"  (Exhibit Z, Insuring

Agreements § 1.1) (emphasis in the original).

    153.    Under the Lynch Policy, "Insured" is defined, in relevant part, as:

2.15.1 The Named Insured listed in Item 1 of the Declarations;

2.15.2 An Attorney who is, at the time a Claim is first made, or who was, at the Effective Date of the Policy, a partner, stockholder or employee of the Named Insured, and who is or was identified in Item 2 of the Declarations, provided that the requirements of this Policy concerning amendment of Item 2 have been complied with, and solely for Claims arising from such Attorney's Professional Services on behalf of the Named Insured or a Predecessor Firm, performed on or after the Attorney's Retroactive Coverage Date, and solely to the extent no other insurance or extension of insurance applies;

2.15.3 An Attorney who was, before the Effective Date of the Policy, a partner, stockholder or employee of the Named Insured or a Predecessor Firm, provided that information requested on the application concerning such persons has been provided to the Company, and solely for Claims arising from such Attorney's Professional Services on behalf of the Named Insured or a Predecessor Firm, performed on or after the Attorney's Retroactive Coverage Date, and solely to the extent no other insurance or extension of insurance applies; [and]

* * *

2.15.6 The heirs, executors, administrators, assigns and legal representatives of an Insured, in the event of the Insured's death, incapacity or bankruptcy[.]

(Exhibit Z, Definitions § 2.15).

    154.    The Lynch Firm is the Named Insured under the Lynch Policy.  (Exhibit Z,

Declarations Item 1).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*        Page 46
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 46 of 59

155. Lynch is an insured attorney under the Lynch Policy and the Lynch Estate is an "Insured" under the Lynch Policy. (Exhibit Z, Declarations Item 2 & Definitions § 2.15.6).

156. Hozubin is not identified as an individual insured under the Lynch Policy and is not an "Insured"—as that term is defined in the Lynch Policy—under the Lynch Policy. (Exhibit Z, Declarations Item 2 & Definitions § 2.15).

157. The Hozubin Firm is not a Predecessor Firm[4] of the Lynch Firm, as defined in the Lynch Policy. (Exhibit Z, Definitions § 2.23).

158. The Suits allege Hozubin, acting on behalf of the Hozubin Firm, made errors and omissions in the representation of the Maxim Defendants in the Collens Suit. (Exhibit C ¶ 12; Exhibit D ¶¶ 4, 11-12, 18-20, 27-31, 34, 38).

159. The Lynch Policy does not afford coverage for the Hozubin Defendants with respect to the Suits because (a) the Suits do not arise from or in connection with professional services rendered by Hozubin on behalf of the Lynch Firm and (b) neither Hozubin nor the Hozubin Firm are an "Insured" as defined in the Lynch Policy. (Exhibit Z, Declarations Item 1 and Definitions § 2.15).

160. The Lynch Policy does not afford coverage for the Hozubin Defendants with respect to the Suits to the extent any exclusions in the Lynch Policy apply to exclude coverage. (Exhibit Z, Exclusions § 3).

---

[4] The Lynch Policy defines "Predecessor Firm" as "any sole proprietorship, partnership, limited liability partnership, limited liability corporation, or professional corporation that was engaged in the private practice of law, the financial assets and liabilities of which the Named Insured acquired more than fifty percent, provided that such firm has been disclosed to the Company in the application." (Exhibit Z, Definitions § 2.23).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 47
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 47 of 59

161. The Lynch Policy specifically excludes coverage for "any actual or potential Claim arising from or in connection with any act, error, or omission in Professional Services rendered or that should have been rendered by the Insured in regard to the Insured's relationship with or work performed for or on behalf of [the Hozubin Firm]." (Exhibit Z, Lynch Policy Excluded Entity Endorsement, Exclusions § 3). The Lynch Policy does not afford coverage for and "does not apply to any actual or alleged facts, events, circumstances, transactions or matters relating to" the Hozubin Firm. (*Id.*).

162. The Suits arise from or in connection with acts, errors, or omissions performed by Hozubin solely on behalf of the Hozubin Firm, the Named Insured under the Hozubin Policy, and were not performed by Hozubin on behalf of, in affiliation with, or with respect to the Lynch Firm. (*See*, *e.g.*, Exhibit C ¶ 12; Exhibit D ¶¶ 4, 11-12, 18-20, 27-31, 34, 38).

163. The Lynch Policy does not afford coverage to the Hozubin Defendants with respect to the Suits because all alleged acts, errors, or omissions from which the allegations against the Hozubin Defendants in the Suits arise, as well as all activities by the Hozubin Defendants with respect to the Collens Suit, were performed by, for, or on behalf of the Hozubin Firm. (Exhibit Z, Lynch Policy Excluded Entity Endorsement, Exclusions § 3; Exhibit C ¶ 12; Exhibit D ¶¶ 4, 11-12, 18-20, 27-31, 34, 38).

164. The Lynch Policy specifically excludes coverage for "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 48
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 48 of 59

committed by, at the direction of, or with the consent of an Insured[.]" (Exhibit Z, Exclusions § 3.1.1) (emphasis in original).

165. In the Maxim Suit, Maxim alleges, *inter alia*: (a) Hozubin "intentionally mischaracterized the import of the court's ruling that excluded Maxim's expert witnesses" in the Collens Suit; (b) Hozubin "intentionally misled Maxim as to the potential size of the of the likely verdict" in the Collens Suit; (c) Hozubin's "communications were made with the intent to deceive Maxim as to the significance of the sanctions imposed against Maxim, and as to the potential size of the verdict" in the Collens Suit; (d) Lynch's, the Lynch Firm's, and the Hozubin Defendants' "misrepresentation, and deceit caused Maxim to reject Collens' settlement offer, which led Maxim to suffer[] an ascertainable loss of money as a result of the increased verdict award"; and (e) "[i]n the course of providing legal services to Maxim, [Lynch's, the Lynch Firm's, and the Hozubin Defendants'] conduct included acts and/or practices that were unfair and/or deceptive" in violation of the UTPA. (Exhibit C ¶¶ 26, 34, 43).

166. In the Adkins Suit, Adkins alleges, *inter alia*: (a) Hozubin "intentionally mischaracterized the import of the court's ruling that excluded [the Maxim Defendants'] expert witnesses" in the Collens Suit; (b) Hozubin "intentionally misled [the Maxim Defendants] as to the potential size of the of the likely verdict" in the Collens Suit; (c) Hozubin's "communications were made with the intent to deceive [the Maxim Defendants] as to the significance of the sanctions imposed against [the Maxim Defendants] and the potential size of an adverse verdict" in the Collens Suit; (d) the

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                   Page 49
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 49 of 59

Hozubin Defendants' "misrepresentation, and deceit caused [the Maxim Defendants] to reject Collens' settlement offer, which led to an entry of Judgment against Adkins and Maxim in the amount of $20,379,727.96"; and (e) "[i]n the course of providing legal services to [Adkins], [Lynch's, the Lynch Firm's, and the Hozubin Defendants'] conduct included acts and/or practices that were unfair and/or deceptive" in violation of the UTPA.  (Exhibit D ¶¶ 26, 34, 43).

167.    Even if the Hozubin Defendants are "Insureds" under the Lynch Policy, although they are not, the Suits are outside the coverage afforded by the Lynch Policy because they allege, and arise from or in connection with, dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful acts allegedly committed by the Hozubin Defendants and the Lynch Defendants.  (Exhibit Z, Exclusions § 3.1.1; Exhibit C ¶¶ 26, 34, 43; Exhibit D ¶¶ 26, 34, 43).

168.    The Lynch Policy does not afford coverage to the Hozubin Defendants with respect the Suits to the extent the relief the Maxim Defendants seek in the Suits does not constitute "Damages" as defined in the Lynch Policy.    (Exhibit Z, Insuring Agreements § 1.1 & Definitions § 2.6).

169.    The Lynch Policy specifically excludes from the definition of "Damages":

2.6.1    punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, regardless against whom the same is levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

2.6.2    awards deemed uninsurable by law;

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*                    Page 50
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 50 of 59

2.6.3   injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

2.6.4   restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; or

2.6.5   any injury or damage to, destruction of, loss of, or loss of use of any funds or property.

(Exhibit Z, Definitions § 2.6).

170.   In the Maxim Suit, Maxim seeks "treble damages and full reasonable attorney's fees" as relief for Maxim's UTPA cause of action against the Hozubin Defendants and the Lynch Defendants.  (Exhibit C ¶ 45).

171.   In the Adkins Suit, Adkins similarly seeks "treble damages and full reasonable attorney fees" as relief for Adkins' UTPA cause of action against the Hozubin Defendants and the Lynch Defendants.  (Exhibit D ¶ 45).

172.   The exemplary damages sought by Maxim and Adkins in the Suits are not, and the attorney fees[5] sought by them may not, be "Damages" within the Lynch Policy's coverage.  (Exhibit Z, Definitions § 2.6; Exhibit C ¶ 45; Exhibit D ¶ 45).

173.   An actual controversy exists between ALPS and Defendants regarding whether the Lynch Policy affords coverage for the Hozubin Defendants with respect to the Suits.

---

[5] The Lynch Policy contains an endorsement designated "AK Fees" with the form number "LPL-END-AK-Fees (06/13)" ("Lynch Policy AK Fees Endorsement").  To the extent the "attorney fees" sought in the Suits are pursuant to Alaska Rule of Civil Procedure 82, or awarded on any other basis and otherwise are within coverage, the fees are subject to the Lynch Policy's limit of liability and will be outside coverage in the event the limit of liability is exhausted.  (See Exhibit Z, Lynch Policy AK Fees Endorsement).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,                    Page 51
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 51 of 59

174. Because the Lynch Policy does not afford coverage to the Hozubin Defendants, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring the Lynch Policy does not afford coverage to the Hozubin Defendants for the Suits and ALPS has no duty to defend or indemnify the Hozubin Defendants under the Lynch Policy with respect to the Suits.

## THIRD CAUSE OF ACTION

### (For a Declaration the Lynch Policy Does Not Afford Coverage to the Lynch Defendants for Acts, Errors, Or Omissions by Lynch on or After August 1, 2015 or on Behalf of the Hozubin Firm – Against All Defendants)

175. ALPS incorporates and realleges paragraphs 1 through 174 as if fully set forth herein.

176. ALPS does not dispute the Lynch Policy affords coverage to the Lynch Defendants with respect to the Suits, subject to the terms of the Lynch Policy, for acts, errors, or omissions by the Lynch Firm or by Lynch, on behalf of the Lynch Firm, from on or around April 17, 2014 to July 31, 2015.

177. The Lynch Policy does not afford coverage for the Lynch Defendants with respect to the Suits to the extent any exclusions in the Lynch Policy apply to exclude coverage. (Exhibit Z, Exclusions § 3).

178. The Lynch Policy specifically excludes coverage for "any actual or potential Claim arising from or in connection with any act, error, or omission in Professional Services rendered or that should have been rendered by the Insured in regard to the Insured's relationship with or work performed for or on behalf of [the Hozubin

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*          Page 52
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 52 of 59

Firm].” (Exhibit Z, Lynch Policy Excluded Entity Endorsement, Exclusions § 3). The Lynch Policy does not afford coverage for and “does not apply to any actual or alleged facts, events, circumstances, transactions or matters relating to” the Hozubin Firm. (*Id.*).

179. In the Maxim Suit, Maxim alleges Lynch “was initially Maxim’s lead counsel, and he remained lead counsel until his death on or about April 5, 2016.” (Exhibit C ¶ 11).

180. In the Adkins Suit, Adkins alleges Lynch “and his law firm was originally retained to represent Adkins and Maxim in the Collens litigation and Lynch and his firm remained in that position until Lynch’s death on or about April 5, 2016.” (Exhibit D ¶ 11).

181. Lynch, upon information and belief, represented the Maxim Defendants on behalf of the Lynch Firm from April 17, 2014 through July 31, 2015; from August 1, 2015 through his incapacitation and passing in April 2016, Lynch represented the Maxim Defendants on behalf of the Hozubin Firm.

182. The Lynch Policy does not afford coverage to the Lynch Defendants with respect to the Suits for any act, error, or omission by Lynch on or after August 1, 2015 or on behalf of the Hozubin Firm. (Exhibit Z, Lynch Policy Excluded Entity Endorsement, Exclusions § 3).

183. An actual controversy exists between ALPS and Defendants regarding the extent of coverage afforded the Lynch Defendants under the Lynch Policy with respect to the Suits.

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*     Page 53
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 53 of 59

184.    Because the Lynch Policy does not afford coverage to the Lynch Defendants for any act, error, or omission by Lynch after August 1, 2015 or on behalf of the Hozubin Firm, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring the Lynch Policy does not afford coverage to the Lynch Defendants—and ALPS has no duty to defend or indemnify the Lynch Defendants under the Lynch Policy—with respect the Suits for any act, error or omission by Lynch after August 1, 2015 or on behalf of the Hozubin Firm.

## FOURTH CAUSE OF ACTION

### (For a Declaration Regarding the Limits of Liability Available to the Lynch Defendants – Against all Defendants)

185.    ALPS incorporates and realleges paragraphs 1 through 184 as if fully set forth herein.

186.    The Lynch Policy originally provided limits of liability of $10,000,000 each claim and $10,000,000 in aggregate for claims made and reported during the Lynch Policy's August 1, 2014 to August 1, 2015 policy period.   (Exhibit Z, Declarations Item 4).

187.    The Lynch ERP Endorsement, effective August 1, 2015, amended the Lynch Policy to include an unlimited Extended Reporting Period: "the coverage afforded by the [Lynch] Policy . . . applies to Claims first made against [the Lynch Firm] and first provided to the Company during the Extended Reporting Period[,]" for which there is no expiration date.  (Exhibit Z, Lynch ERP Endorsement, Conditions § 4.4).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*                    Page 54
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 54 of 59

188.    "Extended Reporting Period" is defined in the Lynch Policy to mean:

[T]he period of time set forth in an Extended Reporting Period Endorsement that may be provided after the end of the Policy Period, as described in Section 4.4 of this Policy, for reporting of a Claim that: (a) would otherwise be covered by this Policy; (b) arises from an act, error or omission or Personal Injury that occurred after the Loss Inclusion Date and the Retroactive Coverage Date and before the end of the Policy Period; and (c) is first made, and first reported to the Company, after the end of the Policy Period and during the Extended Reporting Period.

(Exhibit Z, Definitions § 2.12).

189.    The Claim was first made and reported to ALPS in December 2017, during the Lynch Policy's Extended Reporting Period.  (Exhibit Z, Lynch ERP Endorsement, Conditions § 4.4).

190.    The Lynch ERP Limit Endorsement amended the Lynch Policy's limits of liability applicable to claims, such as the Claim, made and reported to ALPS during the Extended Reporting Period by replacing Section 4.4.7 of the Lynch Policy with the following:

4.4.7  The Extended Reporting Period Endorsement simply extends the reporting period during which a claim may be first reported to the Company under this Policy.  Any Claim reported to the Company during the Extended Reporting Period shall be treated as if reported during the Policy Period.  The Extended Reported Period Endorsement does not create or establish a new or separate Limit of Liability.  Instead, the Company's Limit of Liability under an Extended Reporting Period Endorsement is part of, and not in addition to, the Company's Limit of Liability during the Policy Period.  For purposes of the Extended Reported Period, the Limit of Liability will not exceed Five Million Dollars ($5,000,000) which shall be the maximum amount the Company shall pay for all Claims first made and reported to the Company during the Extended Reporting Period.

(Exhibit Z, Lynch ERP Limit Endorsement, Conditions § 4.4.7).

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,    Page 55
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 55 of 59

191. Because the Claim—including, but not limited to, the Suits—was made and reported to ALPS during the Lynch Policy's Extended Reporting Period, the Lynch Policy provides, with respect to the Claim, limits of liability of $5,000,000 each claim and $5,000,000 in aggregate, subject to a $10,000 each claim deductible. (Exhibit Z, Lynch ERP Endorsement & Lynch ERP Limit Endorsement, Conditions § 4.4).

192. The Lynch Anti-Stacking Endorsement further amended the Lynch Policy and provides:

> 4.5.2 If two or more policies of insurance issued by the Company provide coverage to the Insureds for a Claim, or provide coverage to multiple Insureds for a claim based on an allegation of a legal relationship between such Insureds, then all such Claims shall be treated as a single Claim, and the maximum amount the Company shall be obligated to pay with respect to the Claim and in the aggregate on behalf of all such Insureds shall not exceed the highest single applicable limit of liability that remains available under any one policy. The Limit of Liability under this Policy shall be reduced, and may be exhausted, by payments under this Policy and/or payments under such other policies issued by the Company.

(Exhibit Z, Lynch Anti-Stacking Endorsement, Conditions § 4.5.2).

193. For reasons described in this Complaint, and subject to the terms of the Policies and ALPS's reservation of rights, (a) the Lynch Policy may afford coverage to the Lynch Defendants with respect to the Claim for acts, errors, or omissions by the Lynch Firm or Lynch, on behalf of the Lynch Firm, from on or around April 17, 2014 to July 31, 2015, and (b) the Hozubin Policy may afford coverage to the Lynch Defendants with respect to the Claim for acts, errors, or omissions committed by Lynch, on behalf of the Hozubin Firm, from August 1, 2015 until Lynch's death on or around April 5, 2016.

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,  Page 56
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 56 of 59

194.   To the extent the Lynch Policy and the Hozubin Policy both afford coverage to the Lynch Defendants with respect to the Claim—including, but not limited to, the Suits—"the maximum amount [ALPS] shall be obligated to pay with respect to the Claim and in the aggregate", on behalf of the Lynch Defendants, "shall not exceed the highest single applicable limit of liability that remains available under" either the Lynch Policy or the Hozubin Policy.

195.   An actual controversy exists between ALPS and Defendants regarding the limits of liability available to the Lynch Defendants with respect to the Suits.

196.   For the reasons described above in Paragraphs 185 to 195, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring (a) the Lynch Policy's limit of liability available to the Lynch Defendants with respect to the Suits is $5,000,000, subject to a $10,000 deductible, and (b) to the extent the Lynch Policy and the Hozubin Policy both afford coverage to the Lynch Defendants with respect to the Suits, the maximum amount ALPS shall be obligated to pay with respect to the Suits, on behalf of the Lynch Defendants, shall not exceed the highest single applicable limit of liability that remains available under either the Lynch Policy or the Hozubin Policy.

WHEREFORE, ALPS prays that judgment be entered in its favor and against Defendants as follows:

1.   Declaring the Hozubin Policy does not afford coverage to the Hozubin Defendants or the Lynch Defendants for the Suits;

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*          Page 57
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 57 of 59

2. Declaring ALPS has no duty to defend or indemnify the Hozubin Defendants or the Lynch Defendants under the Hozubin Policy with respect to the Suits;

3. Declaring the Lynch Policy does not afford coverage to the Hozubin Defendants for the Suits;

4. Declaring ALPS has no duty to defend or indemnify the Hozubin Defendants under the Lynch Policy with respect to the Suits;

5. Declaring the Lynch Policy does not afford coverage to the Lynch Defendants with respect to the Suits for acts, errors, or omissions by Lynch on or after August 1, 2015 or on behalf of the Hozubin Firm;

6. Declaring ALPS has no duty to defend or indemnify the Lynch Defendants under the Lynch Policy with respect to the Suits for acts, errors, or omissions by Lynch on or after August 1, 2015 or on behalf of the Hozubin Firm;

7. Declaring the Lynch Policy's limit of liability is $5,000,000 per claim and in aggregate, subject to a $10,000 deductible;

8. Declaring, to the extent the Lynch Policy and the Hozubin Policy both afford coverage to the Lynch Defendants with respect to the Suits, the maximum amount ALPS shall be obligated to pay with respect to the Suits, on behalf of the Lynch Defendants, shall not exceed the highest single applicable limit of liability that remains available under either the Lynch Policy or the Hozubin Policy; and

9. Awarding ALPS such additional relief as shall be deemed appropriate in the circumstances, together with its costs and expenses.

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.*,    Page 58
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 58 of 59

Dated at Anchorage, Alaska this 19th day of July, 2019.

> DORSEY & WHITNEY LLP
> Counsel for Plaintiff ALPS Property &
> Casualty Insurance Company
>
>
> By: _s/ Michael A. Grisham_____
> Alaska Bar No. 9411104_____
> 1031 West Fourth Avenue, Suite 600
> Anchorage, AK  99501-5907
> Telephone: 907-257-7829
> Facsimile: 907-276-4152
> Email: grisham.michael@dorsey.com

*ALPS Property & Casualty Insurance Co. v. Hozubin & Associates, P.C., et al.,*    Page 59
Case No. _____
4851-7773-7115.2

Case 3:19-cv-00201-SLG   Document 1   Filed 07/19/19   Page 59 of 59